UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | |
| ) | 07 CR 815-3 |
| ) | Honorable Rebecca R. Pallmeyer |
| ALAN GUZZINO ) | |

**DEFENDANT GUZZINO'S SENTENCING MEMORANDUM**

NOW COMES, defendant ALAN GUZZINO, by and through his attorneys, RALPH E. MECZYK and DARRYL A. GOLDBERG, and respectfully requests, according to <u>Gall v. United States</u>, 128 S.Ct. 586 (2007), <u>United States v. Booker,</u> 125 S.Ct. 738 (2005), and 18 U.S.C. § 3553(a), that the Honorable Court impose a sentence of probation and an extensive period of supervised release with stringent conditions, because such a sentence is sufficient but not greater than necessary to comply with the purposes of sentencing under 18 U.S.C. 3553(a). In support of this request, Mr. Guzzino states as follows:

    **I.    Sentencing Request and Summary**

Over the past sixty years, with the exception of his involvement in this offense, Alan Guzzino has lived a law abiding life as a model citizen and role model for his three successful children and his seven grandchildren. He has worked hard his entire life to provide for his family and make his parents and children proud. He is profoundly ashamed, embarrassed, and extremely remorseful for this aberrant behavior. His uncharacteristic behavior was not motivated out of greed, but out of economic desperation and the strong desire not to let his dying father's business fail. His father, Sam Guzzino, built South Harlem Auto Supply ("SHSA") from the ground up and ran the business for almost 50 years until his death. When the business began to fail, it was killing Mr. Guzzino's

1

father, literally and figuratively; all of his hard work was crumbling before his eyes and the economic difficulties made it harder to provide for his family. Conveniently, this is when Defendant Ralls[1] approaches Mr. Guzzino and demands he participate in his scheme. Afraid of losing SHSA's biggest account, and facing imminent failure of his family business, Mr. Guzzino agreed to participate in the scheme designed by Defendant Ralls. This aberrant behavior was the proverbial Hobson's choice. Although not acting under true duress, that is the reasonable fear of immediate death or serious bodily harm, Mr. Guzzino was faced with the loss of income for his mother and father, his wife and three children, and his brother and his brother's family. In a dire position, Mr. Guzzino made a mistake that he is profoundly ashamed of.

Despite this monumental lapse in judgment, Mr. Guzzino has worked hard in his post-offense rehabilitation and is a productive member of society. He is working full time as an automobile part's salesman at Genuine Parts Company ("GPC") and has been recognized for his outstanding job performance in 2007. (PSR at 9.252-53). Accordingly, it is not necessary to imprison Mr. Guzzino to meet the § 3553(a) punishment goals of deterrence, protection of the public, respect for the law, and to avoid a disparity in sentencing amongst his co-defendants. Instead, incarcerating Mr. Guzzino would serve a purely punitive purpose. A sentence of probation, followed by a period of supervised release which could include a period of home confinement with stringent conditions, will adequately reflect the seriousness of the offense while still taking into account Mr. Guzzino's significant remorse and inappreciable risk of recidivism, and his continued positive contribution to society. Such a sentence will also advance the § 3553(a) sentencing goal of providing restitution to the Village of Bolingbrook, because it will enable Mr. Guzzino to continue to work and pay back any restitution, without further victimizing his family.

---

[1] Defendant Ralls, who hatched the scheme, was sentenced to probation.

**II.     Legal Standard**

"Post Booker, a district court has significantly more freedom than before Booker to fashion an appropriate sentence."  United States v. Baker, 445 F.3d 987,  (7th Cir. 2006). Under Booker, the United States Sentencing Guidelines are merely "advisory," and sentencing courts are required to consider all of the factors listed in 18 U.S.C. § 3553 (a) in imposing sentence.  Booker, 125 S.Ct. 738, 757 (2005).  The Seventh Circuit has held that Booker requires district courts to consider the factors set forth in 18 U.S.C. § 3553 (a) when sentencing defendants under the advisory guidelines.  United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005) ("Section 3553(a), unlike the guidelines themselves after Booker, is mandatory.") (citing Booker, 125 S.Ct.at 764-765); United States v. Cunningham, 429 F.3d 673, 676 (7th Cir. 2005) (explaining that § 3553 (a) is "a directive to the sentencing court"). If the defense raises § 3553 (a) factors in requesting a below guideline sentence, the court is required to conduct an analysis of how those § 3553 (a) factors apply to the facts, and to explain why a particular sentence is appropriate under § 3553 (a). Id. at 675-676.

The primary directive in § 3553 (a) is that the court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with" the purposes of sentencing. *See* 18 U.S.C. § 3553 (a) (*emphasis added*).  Those purposes include the need:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
- to create adequate deterrence;
- to protect the public from future crimes of the defendant; and
- to provide the defendant with necessary treatment and training.

Section § 3553 (a) directs sentencing courts to consider a number of additional factors as well, including:

- the nature and circumstances of the offense, § 3553 (a)(1);
- the history and characteristics of the defendant, § 3553 (a)(1);
- the kinds of sentences available, § 3553 (a)(3);
- the sentencing guideline range, § 3553 (a)(4);
- pertinent Sentencing Commission policy statements, § 3553 (a)(5);
- the need to avoid unwarranted sentencing disparities, § 3553 (a)(6);
- the need to provide restitution to any victims of the offense, § 3553 (a) (7).

As Booker stressed, under the Sentencing Reform Act, "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Booker, 125 S.Ct. at 760 (quoting 18 U.S.C. § 3661). After Booker, courts are therefore required to consider a number of factors which the guidelines discouraged, rejected, or refused to consider at all. In fact, the "statute as modified by Booker, contains an overarching provision instructing courts to 'impose a sentence sufficient but not greater than necessary' to achieve the goals of sentencing." Kimbrough v. United States, 128 S. Ct. 558, 570 (2007) (a sentencing court may vary a sentence based upon a disagreement with the policy judgments implicit in a Federal Sentencing Guidelines provision).

Moreover, The Supreme Court recently reiterated in Gall that "the Guidelines are not mandatory, and thus the range of choice dictated by the facts of the case is significantly broadened." Gall, 128 S.Ct. at 602 (citations omitted). Gall requires that in addition to considering the Guidelines, the "district judge should . . . consider all of the 3553(a) factors to

determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." Gall, at 596-97 (citations omitted); *see also* United States v. Miranda, 505 F.3d 785, 791 (7th Cir. 2007) ("Although the guidelines are treated as advisory after Booker, the application of section 3553(a) is mandatory."). The Supreme Court requires judges "to 'impose a sentence sufficient, but not greater than necessary, to comply with' the basic aims of sentencing" in § 3553(a), Rita v. United States, 127 S.Ct. 2456, 2463 (2007), which include the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to create adequate deterrence; to protect the public from further crimes of the defendant; and to provide the defendant with needed . . . medical care, or other correctional treatment in the most effective manner," 18 U.S.C. § 3553(a)(2). Section 3553(a)(1) also gives sentencing courts "a broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" Gall, 128 S.Ct at 596 n.6. The Court must consider "those factors that are unique to an individual defendant . . . that are not taken into account when calculating the guideline range." United States v. Schmitt, 495 F.3d 860, 865 (7th Cir. 2007).

District court judges have broad discretion to sentence below the advisory guideline range. *See, e.g.*, United States v. Wachowiak, 496 F.3d 744, 751 (7th Cir. 2007) ("We will not substitute our judgment for that of the sentencing court. . . . As with other discretionary decisions, the district court is institutionally better situated to make individualized sentencing judgments than an appellate panel."); United States v. Ngatia, 477 F.3d 496, 501-02 (7th Cir. 2007). A court may issue a below-Guideline sentence even in the absence of extraordinary circumstances. Gall, 128 S.Ct at 595. In fact, a district court judge's "freedom to impose a

reasonable sentence outside the range is unfettered," United States v. Demaree, 459 F.3d 791, 795 (7th Cir. 2007), and the Seventh Circuit will scrutinize a district court's refusal to grant a reduction below the range, United States v. Vaughn, 433 F.3d 917, 924 (7th Cir. 2006).

A below-Guideline sentence is appropriate as long as the reasons are "rooted in § 3553(a), sufficiently individualized to the circumstances of [the] case, and generally associated with sentencing leniency." Wachowiak, 496 F.3d at 745. The Seventh Circuit recently reversed a within guideline sentence, holding that the district court had not considered how evidence of the defendant's mental illness affected the § 3553(a) factors. Miranda, 505 F.3d at 794. Several courts in the Northern District of Illinois have rejected Guideline sentences of incarceration and have placed defendants on supervision with conditions. *See, e.g.*, United States v. Wendy Neal-Cooley, 02-CR-454 (Moran) (rejecting the Guideline range of 70-87 months in a drug distribution case and sentencing the defendant to time served, supervised release, and home confinement with electronic monitoring based on post-offense conduct and family circumstances); United States v. Shante Frazier, 03-CR-718 (Castillo) (rejecting the government's requested sentence of 34 months in a bank robbery case and sentencing the defendant to time served, supervised release, and home confinement with electronic monitoring based on post-offense conduct, medical concerns, and family circumstances); United States v. Szanto, 05-cr-879 (Manning) (rejecting the guideline range of 37-46 months and sentencing the defendant to time served based upon the lack on need for rehabilitation and deterrence among other 3553(a) factors); United States v. Dorthy Durham, 06-CR-297 (Darrah) (rejecting the guideline range of 12-18 months and placing the defendant on probation with home confinement and electronic monitoring based in part on post-offense treatment and rehabilitation).

In the instant case there are numerous factors, as discussed below, all of which indicate the appropriateness of a sentence below the advisory guidelines.

**III.     Factors Favoring a Sentence Below Advisory Guideline Range**

     **A. The Length Of Time Until Mr. Guzzino's First Criminal Act Warrants a Downward Departure From the Advisory Guideline Range.**

The Federal Sentencing Guidelines ("Guidelines") fail to consider the length of time a defendant refrains from the commission of his first crime. It is common for sentencing courts in this circuit to consider that older people have a lower risk of recidivism under the 3553(a)(2) history and characteristics of the defendant. *See, for e.g.,* Szanto, 05-cr-879 (Manning) (defendant was unlikely to commit future crimes because almost 48 when committed first offense) *citing* United States v. Bullion*,* 466 F.3d 574, 577 (7th Cir. 2006) (citing studies that examined relationship between age and recidivism). Moreover, in United States v. Nellum, the court departed from a guideline range of 168-210 months to 108 months where, among other things, the defendant was unlikely to recidivate because of his age of 57. 2005 WL 300073 (N.D. Ind. Feb 3, 2005)(Simon, J.)  In addition, in United States v. Ward, the court granted a downward departure because the defendant was 49 when he committed his first crime. 814 F.Supp. 23 (E.D. Va. 1993).

Similarly, in this case, Mr. Guzzino was almost 50 years old at the time of this offense, and is currently almost 60 years old today. Given his life of law-abiding conduct, a departure is warranted because his older age highlights the fact that: Mr. Guzzino lacks a propensity to commit crimes; he is not beyond rehabilitation; and he is highly unlikely to recidivate. Mr.

7

Guzzino, given the opportunity, has a future as a productive member of his community and will continue to work at GPC were he has been recognized for his outstanding job performance. (PSR at 9.252-53).

**B. In Other Words, Mr. Guzzino's Criminal Conduct Was An Aberration And Represents A Marked Deviation From An Otherwise Law Abiding Life.**

USSG § 5K2.20 authorizes a downward departure for a "single criminal occurrence or single criminal transaction that was committed without significant planning, was of limited duration, and represented a marked deviation from an otherwise law abiding life." Although, arguably the traditional downward departure may be prohibited because Mr. Guzzino's participation in the offense spanned over a period of time, post-Booker, Mr. Guzzino submits that the court may consider it along with the other §3553(a) factors.

Many courts have departed significantly from the guidelines in similar situations. For example, in United States v. Patillo, the court departed where it noted that it was a "first time offense" and that possession of crack was "out of character" for the defendant who had a stable employment history, who committed the offense in a moment of "financial weakness" and with "unusual temptation." 804 F.Supp. 19, 21 (N.D. Cal. 1992). Moreover, in United States v. Jones, the court departed downward to probation when it considered that the crime was aberrant conduct where the defendant had been law abiding until the age of 35. 158 F.3d 492 (10th Cir. 1998). Further, in United States v. Iaconetti, the defendant who pled guilty to possession with intent to distribute cocaine was entitled to an eleven-level departure (from level 25 to level 14) based on single acts of aberrant behavior.

In short, whether considered as a downward departure or as part of the §3553(a) factors, the court should consider the fact that Mr. Guzzino was almost 50 years old when he committed this

8

offense, and it was truly an aberration of an otherwise law abiding life and at a period of time in his life when he was under great financial and emotional pressure. Mr. Guzzino watched his father deteriorate over time, fighting a blood disorder and ultimately succumbing to leukemia, all the while stressing and worrying as his business was crumbling. Mr. Guzzino made a mistake in a moment of tremendous weakness; a mistake that he has learned from and with not make again. Therefore, one §3553 factor that weighs heavily against further incarceration is the need (or in this case the lack thereof) to protect the public from future crimes by Mr. Guzzino. Accordingly, further imprisonment is "greater than necessary" to comply with the purposes of sentencing. *See* 18 U.S.C. §3553(a).

### C. The Amount of Loss Causes Multiple Overlapping Enhancements to Create a Higher Offense Level and is Tantamount to "Double Counting," and Overstates the Seriousness of the Offense.

When calculating the applicable sentencing guidelines (*see* PSR at 4.101- 5.142) Mr. Guzzino's base offense level is calculated primarily under U.S.S.G. §2C1.1(a)(2). Thus, his base offense level is 12 because the scheme involved public officials, rather than level 7 under guideline §2B1.1, which would be used if the fraudulent scheme did not involve public officials. However, according to the government, guideline §2C1.1(b)(3) also increases the offense level because the offense involved a payment for the purpose of influencing public officials Donald Ralls and John Schwab, who hold high-level decision making positions.

To begin, guideline §2C1.1 causes multiple overlapping enhancements that cover the same conduct. Mr. Guzzino's guideline ranges begins at a level 12, opposed to a level 7, based upon a fraud involving public officials, or more specifically a scheme to defraud the Village of Bolingbrook of the intangible right to honest services of defendants Ralls and Schwab.

9

However, by also increasing his offense level because the scheme involved a payment for purposes of influencing public officials, the guidelines impermissibly "double count" and create multiple enhancements for the same offense. Simply put, both enhancements can not apply. In the event this court finds that they do, it should disagree with the enhancement based upon the policy judgments implicit in a Guidelines provision because they "double count" and unfairly punish individuals like Mr. Guzzino because they create disparities amongst the sentences of others involved in similar conduct. *See* Kimbrough, 128 S. Ct. 558, 570 (2007) (a sentencing court may vary a sentence based upon a disagreement with the policy judgments implicit in a Federal Sentencing Guidelines provision).

　　In addition, the amount of loss calculation and the guideline range overstates the seriousness of the offense. Mr. Guzzino did not profit nearly as much as defendant Schwab and did not design the scheme like defendant Ralls. He acted under great duress when he became involved in the scheme as the only to assure his dying father would not see his business fail while he was still alive. He has lived an unselfish life, always putting his family and others before him, and the character letters submitted to the court speak to that. *See letters* attached as Group Exhibit A (previously submitted to the court). Given the totality of the circumstances, applying the guidelines as suggested in the PSR, or failing to depart from the advisory guideline range would overstate the seriousness of Mr. Guzzino's conduct and promote disrespect or animosity toward the law and the concept of justice. Incarcerating Mr. Guzzino would serve only a punitive punishment and would be greater than necessary to serves the purposes of punishment under 18 U.S.C §3553(a).

D. **A Sentence of Probation Which Requires Mr. Guzzino to Continue Receiving Mental Health Treatment Satisfies the Goals of Punishment Under § 3553(a)(2).**

An extensive sentence of probation (or even home confinement with conditions), such as maintaining full-time employment is sufficient, but not greater than necessary, to meet the goals of punishment, because it will provide Mr. Guzzino essential treatment, while still deterring future criminal conduct and satisfying the needs of the public.

**1. Mr. Guzzino's Treatment Needs**

Section 3553(a)(2)(D) directs the Court to fashion a sentence that provides the defendant with necessary "medical care" or other "treatment in the most effective manner." The Sentencing Reform Act "rejects imprisonment as a means of promoting rehabilitation." Mistretta v. United States, 488 U.S. 361, 367 (1989). "Since rehabilitation may not be a basis for incarceration but must be considered as a basis for a sentence, Congress must have anticipated that sentencing judges would use their authority, in appropriate cases, to place a defendant on [supervision] in order to enable [him] to obtain" treatment pursuant to § 3553(a)(2)(D). United States v. Maier, 975 F.2d 944, 947 (2d Cir. 1992). Accordingly, a sentence of probation is the most effective way for Mr. Guzzino to continue mental health treatment which is necessary for his rehabilitation.

Mr. Guzzino suffers from generalized anxiety, panic attacks, and insomnia. (PSR at 8.219-230). Incarcerating Mr. Guzzino will break him. It goes without saying that being confined to a prison cell will only heighten his anxiety, and even a short sentence will cause Mr. Guzzino irreparable harm. Mr. Guzzino is prescribed Xanax, Tylenol with Codeine, Phenazopyridine, Septra DS, Atenolol, Allopurinol, and Tricor. Although Mr. Guzzino is

11

healthy enough to work, his general health and more importantly his mental health, require treatment that is best addressed outside of prison walls.

### 2. The Needs of the Public

A sentence short of incarceration will also satisfy the needs of the public, which include the need to protect the public, to promote respect for the law, and to provide restitution to the Village of Bolingbrook. See § 3553(a)(2)(A), (a)(2)(C), & (a)(7). The fact that Mr. Guzzino has not committed a new offense in the past two years since his arrest, or more importantly his entire life, demonstrates that protection of the public has never been of moment.

A non-incarcerative sentence will also advance the public's interest in receiving restitution. If Mr. Guzzino is sentenced within the Guidelines, he will not only lose his job, but his wife will lose his financial support. However, if Mr. Guzzino receives a sentence short of incarceration, he could actually make significant progress toward the restitution amount over time without depleting his families liquid net-worth and funds available for retirement down the road. Accordingly, "§ 3553(a)(7) [weighs] in favor of a sentence that would allow [him] to remain in the community and working." United States v. Peterson, 2005 U.S. Dist. LEXIS 6098, at *6 (E.D. Wis. Mar. 28, 2005).

**E. A Sentence Reduction for an Incomplete Duress Defense or Mr. Guzzino's Perception of a Lesser Harm is Warranted.**

Mr. Guzzino was dragged into this scheme at a time of emotional and financial weakness. Although U.S.S.G. §5K2.12 (dealing with coercion and duress) does not authorize a downward departure for "personal financial difficulties and economic pressures upon a trade or business," the circumstances of Mr. Guzzino's involvement and entry into the scheme must be considered when assessing the reasonableness of his sentence.

12

Mr. Guzzino was not motivated by greed when Defendant Ralls dragged into this scheme. At the time he was approached, Mr. Guzzino's father was already ill. The business was slowing down and slowly collapsing. Although there was real property as part of the business' assets, income was not being generated as in the past. Mr. Guzzino's father was suffering physically and mentally; he was diagnosed with a blood disorder and then leukemia, and watched all of his hard work crumble before his eyes. Mr. Guzzino couldn't let down his father and was determined to continue to work hard and do everything to could to allow his father to retire and live out his days with dignity. He was determined to keep the business afloat for his father's remaining days. This is when Mr. Guzzino made the mistake falling into Defendant Rall's trap. Ralls and the Village of Bolingbrook was SHAS's biggest account and the threat of losing their business was enough scare Mr. Guzzino into acquiescing to Rall's scheme. Mr. Guzzino knew that if he didn't, the Bolingbrook account would be gone, and unless he surrendered to Ralls, SHAS would collapse and Mr. Guzzino and his entire family would be out of work. His fathers' life's work would be gone.

Although it is not justification for his actions, this lack of greed, selflessness, and his overriding desire to save his ill father's life's work is a truly mitigating factor that is not contemplated by the guidelines, and warrants a severe departure from the advisory guideline range.

**F. A Sentence of Probation is Necessary to Avoid a Disparity in Sentencing from his Co-defendants, Particularly Defendant Ralls. In Addition, Any Sentence Greater Than Probation Will Promote Disrespect For the Law.**

Post- <u>Booker</u> it is commonplace to depart from the guidelines to avoid a disparity in sentence in relationship to co-defendants. In fact, 18 U.S.C. §3553(a)(6) requires the court to

address the need to avoid unwarranted sentencing disparities. In this case, putting aside all the other mitigating factors in this case, it is would be simply unjust for Mr. Guzzino to be incarcerated, when his co-defendant Ralls was sentenced to probation and was the mastermind and instigator of the charged scheme. But for Rall's implicit threat of steering away Bolingbrook's business and causing SHAS to close, Mr. Guzzino would never had become involved in the scheme. If Mr. Guzzino is sentenced to a period of incarceration it will promote disrespect for the law. 18 U.S.C. §3553(a).

**G. Mr. Guzzino's Character and the Totality of the §3553(a) factors demand a Sentence Short of Incarceration. Moreover, the Support From his Family and Community Will Continue to Aid in his Rehabilitation and Support a Sentence of Probation.**

Mr. Guzzino's friends, family, neighbors, religious figures, and customers' praise and admiration for Mr. Guzzino speak volumes about his character. *See generally* Group Exhibit A. His devotion to his family, his life of hard work, his lack of a criminal record and low risk of recidivism, combined with this truly aberrant behavior demand a sentence short of incarceration. The strong support of his family and community will help in Mr. Guzzino's rehabilitation, Wachowiak, 496 F.3d 744,746, and imprisonment will delay access to treatment and will prevent Mr. Guzzino from getting treatment for his depression and anxiety "in the most effective manner." §3553(a)(2)(D). Therefore a sentence of probation with conditions is "sufficient but not greater than necessary" to comply with the purposes of sentencing.

14

## VI.     Conclusion

Based on the foregoing reasons and attached exhibits, Mr. Guzzino respectfully requests that the Court sentence him to a period of probation. Alternatively, Mr. Guzzino requests, the Court substitute any incarceration for a period of home confinement. Such a sentence would serve the interests of the public while still taking into account other sentencing considerations, including Mr. Guzzino's:  age and law abiding life; efforts to continue to remain productive member of the community; extreme remorse, embarrassment and shame; aberrant behavior; treatment needs; full-time employment; and ability to make restitution and other factors mentioned above.

Respectfully submitted,

 s/ Darryl A. Goldberg
Darryl A. Goldberg
One of Mr. Guzzino's Attorneys


 s/ Ralph E. Meczyk
Ralph E. Meczyk
One of Mr. Guzzino's Attorneys

Ralph E. Meczyk
Darryl A. Goldberg
Law Offices of Meczyk Goldberg
111 West Washington Street, Suite 1025
Chicago, Illinois 60602
(312) 332-2853

### CERTIFICATE OF SERVICE

I, Darryl A. Goldberg, an attorney, certify that in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the document "DEFENDANT GUZZINO'S SENTENCING MEMORANDUM" was served on July 10, 2008, pursuant to the District Court's system as to ECF filers.

 /s/ Darryl A. Goldberg
Darryl A. Goldberg
